723 So.2d 562 (1998)
Mary Ann ELDRIDGE, et al.
v.
Deloris LOFTIS, et al.
Deloris Loftis a/k/a Annie Deloris Loftis, et al.
v.
Mary Ann Eldridge, et al.
1961193 and 1961301
Supreme Court of Alabama.
April 10, 1998.
Order Modifying Opinion Modified on Overruling of Rehearing September 25, 1998.
*563 Wallace H. Lindsey III, Butler, for appellants/cross appellees.
Joseph C. McCorquodale III and Jacqualyn S. Bradley of McCorquodale & McCorquodale, Jackson; Joseph W. Hutchinson III, Butler; and Timothy C. Hutchinson, Butler, for appellees/cross appellants.
ALMON, Justice.
The question in this appeal is whether the counterclaimants presented sufficient evidence of a parol gift of real property by a grandmother to her grandson, coupled with adverse possession by the grandson, to overcome a provision of the grandmother's will giving her grandson only a life estate in that same real property. We hold that the grandson received a life estate.
At the time of trial, both the grandmother, Dotsie McAllister, and the grandson, McAllister Loftis, were deceased. Dotsie McAllister died in 1958. By her will McAllister Loftis was to receive a life estate in several tracts of land, including the one on which he lived; that tract was called the "homeplace." The will gave remainder interests to his four children by his first wife, Elizabeth.
McAllister died in 1988. McAllister's children by his wife Elizabeth instituted an eviction action against Deloris Loftis, who was McAllister's second wife and his widow. McAllister's five children by his wife Deloris intervened; Deloris and those children counterclaimed to quiet title in themselves to the homeplace and three other parcels.[1] The circuit court awarded the homeplace to Deloris but denied the other relief sought, effectively holding that Deloris and her children had met their burden of proving a parol gift and adverse possession as to the homeplace but not as to the other three tracts.
In 1950, Dotsie McAllister built a house on the homeplace for McAllister and Elizabeth and their children to live in. In 1953, McAllister divorced Elizabeth and married Deloris. Dotsie McAllister's will included the following provision:
"I will and devise to my said grandson, McAllister Loftis, subject to all provisions hereinafter stipulated, for his lifetime, the following described land in Choctaw County, Alabama, to wit: [describing the homeplace and two of the other three tracts]. The house and yard thereto now occupied by said McAllister Loftis is included in this devise, regardless of whether it is located on the land described in this paragraph of my will. To have and to hold to my said grandson for his lifetime, absolute power of disposition of all timber on said land for his lifetime and with the powers herein stipulated over the oil, gas and other minerals in, on, under and which may be produced from said land. For his lifetime, the said McAllister Loftis shall be entitled to all rents and profits from said land and shall have the exclusive rights to sell or otherwise dispose of all timber being or growing on said land during his lifetime the same as if he owned said land in fee simple, and he shall be entitled to receive all proceeds from said timber as his own...."
(Emphasis added.) The devise provides further for McAllister's use of the land during his life and then gives the land to Elizabeth's four children, by name, for their lifetimes and then to their heirs.
Dotsie McAllister executed this will in July 1957. The will does not mention Deloris Loftis or any children of McAllister's second marriage, other than as to one item in which one of Deloris's sons takes a part interest. Nevertheless, Deloris and her children claim an interest in the tracts of land at issue on the theory that Dotsie McAllister made a parol gift of the tracts to McAllister Loftis in or about 1950; that he thereupon went into *564 possession of those tracts; that the possession was adverse to Dotsie McAllister; and that his adverse possession ripened into title upon the expiration of either the 10-year period of adverse possession or the 20-year period of prescription.
Deloris and her children claim that McAllister obtained title pursuant to the alleged gift and adverse possession, by virtue of the principle stated in Pendley v. Pendley, 338 So.2d 405 (Ala.1976). As evidence that Dotsie made a parol gift in 1950, Deloris and her children introduced the written contract relating to the construction of the house; that document includes this notation in Dotsie McAllister's handwriting: "This home is a gift from grandmother McAllister to grandson McAllister Loftis." Other than this writing, the principal evidence of a parol gift was the testimony of Deloris. However, the alleged gift would have taken place at least three years before she married McAllister, and her testimony does not show that she had firsthand knowledge regarding the alleged parol gift of the real property.
In Pendley v. Pendley, 338 So.2d 405, 406 (Ala.1976), the Court stated the issue thus: "Is possession by the grantee of an oral conveyance, which is invalid to pass title, adverse to the grantor of such conveyance?" The Court held that, because there was evidence that "the father attempted to make an oral conveyance of the 80 acres to his son, C.B.," id., the son's possession was adverse to the father, not permissive, and the son acquired title by adverse possession upon the running of the 20-year prescriptive period.
However, in this case, the devise in Dotsie McAllister's will of a life estate indicates that she had not intended seven years earlier to make an oral conveyance of the homeplace, informally memorialized by the writing on the construction contract. The will is evidence that McAllister Loftis's possession was permissive rather than adverse. As the Court said in Pendley, "`Permissive' denotes retention of title by the owner." 338 So.2d at 407. Dotsie McAllister's devise of a life estate in her will indicates that she had intended to retain at least some interest in the land and to dispose of that land otherwise than by making a gift to McAllister Loftis in fee simple. The 1950 handwritten notation is consistent with the conclusion that Dotsie McAllister intended a gift of a life estate, and so does not necessarily contradict the will.
The circuit judge who conducted the trial of this action left the bench without rendering a judgment. The district judge who thereafter decided the case had before him only the record that is now before us. In these circumstances, the ore tenus rule does not apply and no presumption of correctness attends the findings of the trial judge. Phillips v. Knight, 559 So.2d 564, 567 (Ala.1990); Hacker v. Carlisle, 388 So.2d 947, 950 (Ala.1980); § 12-2-7(1), Ala. Code 1975.
A parol gift of land is ineffective to pass title, but it may create a tenancy at will, which, coupled with adverse possession, may ripen into title in the donee. Pendley, supra; Collins v. Collins, 253 Ala. 288, 44 So.2d 756 (1950). However, evidence in support of a gift must be clear and convincing. Tierce v. Macedonia United Methodist Church of Northport, 519 So.2d 451, 459 (Ala.1987); DeMouy v. Jepson, 255 Ala. 337, 51 So.2d 506 (1951).
To the extent that the handwritten note may be evidence that Dotsie McAllister attempted in 1950 to make a parol gift of the fee in these parcels, its evidentiary value is outweighed by that of the will and the attendant circumstances. The handwritten note is only an informal writing on a contract between Dotsie McAllister and a third party. It is in no respects similar to a deed or any other conveyance and is at most indirect evidence of a then-existing intent to make some sort of gift to McAllister. There is nothing unusual or conclusive in the fact of a grandmother building a house for her grandson on property she owns. There was evidence that Dotsie McAllister had a sophisticated knowledge of property and conveyancing at the time she allegedly attempted to make a parol gift in 1950. For example, in May 1953, she deeded 1,642 acres to McAllister. Also, her will devised seven lots in the town of York to McAllister. The record contained evidence of numerous other real estate transactions by Dotsie McAllister. She knew how to convey real *565 property, so it is unlikely that she would have attempted to convey real property by parol gift.
In contrast to the informal notation on the construction contract, the will is a solemn document requiring deliberate planning and formal execution. See, e.g., Ala. Code 1975, § 43-8-131; Black v. Seals, 474 So.2d 696 (Ala.1985); First National Bank of Birmingham v. Klein, 285 Ala. 505, 234 So.2d 42 (1970). A testatrix's intent as shown in her will is not to be lightly defeated. Id. Title to real property is made certain by formal conveyances in writing, recorded in the probate office. See generally Ala. Code 1975, § 35-4-50 et seq. All of these rules and other rules regarding the solemnity of wills weigh heavily against any finding of a parol gift in 1950 in contradiction to Dotsie McAllister's 1957 will. Because the will provides clear, written evidence that Dotsie McAllister in 1957 considered herself to hold title to these properties, the ambiguous writing on the contract with a third party is not sufficient evidence to establish that in 1950 she had intended to part with fee simple title. Furthermore, we find no other significant evidence in the record that is sufficient to support a finding that in 1950 Dotsie McAllister had intended to relinquish title by a parol gift.
Because the evidence does not support a finding that Dotsie McAllister intended to relinquish title in 1950, we must conclude that McAllister Loftis's possession was not adverse to Dotsie McAllister, but was permissive. Before her death, he lived on, cut timber from, and farmed the land, all with her knowledge and permission. After her death, he possessed and used the land as a life tenant, and not adversely to his first four children, the holders of a remainder interest. A life tenant cannot possess adversely to a remainderman. Sims v. Sims, 502 So.2d 722 (Ala.1987).
Alternatively, even if we viewed the evidence as supporting a finding of a parol gift in 1950, the probate of the will in 1958 cut off any adverse possession that later might have ripened into title in McAllister Loftis.
"`Title to land, legal or equitable, does not pass by parol gift and possession taken thereunder. Ten years' adverse possession may confer (we interpolate, under certain conditions, Cox v. Broderick, 208 Ala. 690, 95 So. 186) title, or, as sometimes said, ripen into title. Until then, the gift is revocable: the donee is in law a tenant at will.' Gillespie v. Gillespie, 149 Ala. 184, 43 So. 12; Collins v. Johnson, 57 Ala. 304; Boykin v. Smith, 65 Ala. 294; Cooke v. Wilbanks, 219 Ala. 44, 121 So. 45, 46."
Collins v. Collins, 253 Ala. 288, 290, 44 So.2d 756, 758 (1950) (emphasis added). Therefore, even if we considered the evidence as proving that Dotsie McAllister attempted to make a parol gift of the land in 1950, the tenancy at will created thereby would have been terminated in 1958 by the probate of her will. This date would be before any adverse possession by McAllister Loftis would have ripened into a fee simple title.[2]
There is even less evidence of any parol gift of the parcels of land other than the homeplace. Deloris and her children have cross appealed from the judgment insofar as it failed to grant them title to those parcels. In that respect, the judgment is affirmed.
For the foregoing reasons, the judgment is affirmed to the extent that it denied relief to Deloris Loftis and her children on their counterclaim, and it is reversed to the extent that it granted them title to the homeplace.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, COOK, SEE, and LYONS, JJ., concur.

On Application for Rehearing
ALMON, Justice.
In their application for rehearing, Deloris Loftis and her children argue that the will *566 does not actually describe the homeplace. However, the inconsistency in the descriptions of the land is a self-correcting typographical error because the will described the homeplace as being in Township 12 North rather than in Township 13 North, where the property is actually situated. No issue was made at trial pertaining to this discrepancy, and, in fact, counsel for Deloris and her children stipulated that there was no disagreement as to the properties that are at issue in this case, stating:
"[T]here is no disagreement among the plaintiffs and the defendant insofar as the description of the property is concerned.... [W]e're all talking about the same property."
Although such discrepancies might pose problems in cases where successors in interest have relied on record title, such a situation is not present in this case, because all the parties were familiar with each other and with the property, and because the nature of the title that McAllister Loftis took from Dotsie McAllister did not come into question until this action was filed.
OPINION OF APRIL 10, 1998, MODIFIED; APPLICATION OVERRULED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, COOK, SEE, and LYONS, JJ., concur.
NOTES
[1] Deloris's children claim an interest because, in 1985, McAllister and Deloris Loftis executed deeds purporting to convey the parcels in issue to these five children, retaining life estates in themselves.
[2] Deloris and her children assert that they submitted evidence indicating that Dotsie had made a parol gift of the land as early as 1947. There was complex and conflicting evidence that tenants on the parcels paid rents either to Dotsie McAllister or to McAllister Loftis. We find no clear and convincing evidence that Dotsie McAllister made a parol gift of any of these tracts of land in 1947 or at any time thereafter.