PER CURIAM.
Anthony Ray Hinton challenges his two capital-murder convictions and the resulting sentences of death. We granted cer-tiorari review to determine one issue: whether Hinton was denied effective assistance of counsel because his trial counsel allegedly failed to procure a competent firearms-identification expert to testify in his defense.

Background

Hinton was convicted in September 1986 of two counts of murder made capital because the murders were committed during the course of a robbery. The jury recommended by a vote of 10-2 that Hinton be sentenced to death on each count. The trial court accepted the jury’s advisory verdict and sentenced Hinton to death. Hinton appealed.
The Court of Criminal Appeals affirmed the convictions and sentences. Hinton v. State, 548 So.2d 547 (Ala.Crim.App.1988). This Court then affirmed the judgment of the Court of Criminal Appeals, Ex parte Hinton, 548 So.2d 562 (Ala.1989), and the United States Supreme Court denied Hinton’s petition for certiorari review. Hinton v. Alabama, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989).
Hinton subsequently filed a petition pursuant to Rule 32, Ala. R.Crim. P., challenging his convictions and sentences. The petition was amended several times. After an evidentiary hearing, the trial court denied the petition. Hinton appealed the *334 trial court’s denial of his Rule 32 petition to the Court of Criminal Appeals.
The Court of Criminal Appeals affirmed the judgment of the trial court. Hinton v. State, 172 So.3d 249 (Ala.Crim.App.2006). Hinton filed an application for rehearing, which was overruled. He then petitioned this Court for certiorari review.
Hinton’s certiorari petition alleges numerous grounds for review, including, among other things, that evidence existed that allegedly proved that he was innocent, that the State failed to disclose certain exculpatory evidence before trial, and that he had been denied the effective assistance of trial counsel.
Because the Court of Criminal Appeals’ opinion thoroughly refuted most of Hinton’s arguments, we granted the petition as to only one ground — whether Hinton’s trial counsel was ineffective in failing to procure a competent firearms-identification expert to testify in Hinton’s defense.

Facts

The facts of this case are set out in detail in the Court of Criminal Appeals’ opinion on direct appeal. 548 So.2d at 550-53. However, we briefly note the following:
This case involves two murders committed during two separate robberies; there was also a third robbery in which the victim survived. The two murders involved two factually similar robberies committed at fast-food restaurants located in the Birmingham area late at night: in both robberies, the victims, who were working alone closing the restaurants, were shot in the head twice with a .38 caliber handgun and were left in or near the coolers in the restaurants. In the third robbery, the victim was wounded by a gunshot but was able to escape. Hinton was later identified as the gunman in the third robbery, and a .38 caliber revolver was recovered from Hinton’s home (hereinafter “the Hinton revolver”).
The testimony at trial tended to show that Hinton was the gunman in the third robbery; however, the only evidence linking Hinton to the two murders were forensic comparisons of the bullets recovered from those crime scenes to the Hinton revolver. At trial, the State called as witnesses two forensic examiners, both of whom testified that the bullets recovered from all three crime scenes had been fired from the Hinton revolver.
In rebuttal at trial, the defense presented its own expert witness, Andrew Payne. Payne testified that he had examined each of the bullets recovered from the three robberies and bullets from the Hinton revolver. He concluded that, based on his examination, the bullets recovered from the robberies had not been fired from the Hinton revolver.[1]

Discussion

Hinton argued in his Rule 32 petition that it was undisputed that a competent firearms-identification expert was required for an effective defense at trial because, he contended, the State’s case against him hinged on linking the bullets recovered from the two murders to the Hinton revolver. Hinton argued that his trial counsel knew that a competent expert was indispensable to his case. Hinton argued, however, that his counsel instead retained a retired engineer, Payne, who, Hinton maintained, was not qualified and who was *335 not a competent fírearms-identification expert. The State, on the other hand, argued that Payne was indeed qualified and competent.
After reviewing the arguments and the record before us, we conclude that Judge Shaw, in his dissent to the Court of Criminal Appeals’ opinion, correctly noted that a determination of this issue is premature:
“After carefully reviewing the briefs and after examining both the record on direct appeal and the Rule 32 record, I am satisfied that there is only one issue that has been properly raised and that merits this Court’s intervention — whether, based on the standard set out in Strickland v. Washington, 466 U.S. 668 (1984), Hinton’s trial counsel rendered ineffective assistance by retaining and proceeding to trial with an unqualified firearms witness.
[[Image here]]
“... I feel that it is premature to reverse the circuit court’s judgment[31] because it does not appear to me, after examining the record on direct appeal and the Rule 32 record, that a specific finding as to whether Andrew Payne was a qualified firearms and toolmarks expert has ever been made.... Payne testified that he was a civil engineer with a military background primarily in heavy weapons and ordnance and that he had had limited experience during his career in toolmarks examination of handguns. To say that Payne was soundly discredited at trial on cross-examination by the prosecutor would be an understatement. However, prosecutors successfully challenge the credibility of even qualified expert defense witnesses in many cases and for many reasons. Therefore, to me it is not dis-positive that the prosecutor successfully challenged Payne’s credibility before the jury. Rather, the dispositive issue is whether Payne was a qualified firearms and toolmarks expert.
“... [T]he trial court never specifically found Payne to be qualified to testify about toolmarks. Likewise, the record of the Rule 32 proceedings also reflects that the circuit court made no specific findings on this question....
[[Image here]]
“... The circuit court did not address directly the isshe whether Payne was qualified to be testifying in the first place. Additionally, although the circuit court noted in passing that Payne had ‘been qualified- as an expert ballistics witness for several criminal and civil cases in Alabama,’ that statement does not necessarily reflect a finding that Payne was qualified to testify as a tool-marks expert in this case....
[[Image here]]
“... It is impossible for me to tell ... whether Payne was really ever found to be qualified to testify in court as a firearms and toolmarks expert.
“If Payne was in fact a qualified firearms and toolmarks expert, even if his qualifications did not necessarily match up with those possessed by the State’s experts, then I would affirm the circuit court’s judgment denying Rule 32 relief. Sorting out conflicting testimony from qualified experts presented at trial is solely within the province of the jury. Rule 32 is not a mechanism by which those convicted of criminal offenses may argue many years after trial that they now have found better expert witnesses that a newly selected jury should hear. On the other hand, if Payne was not qualified to testify authoritatively as a firearms and toolmarks expert, then, based on the Strickland v. Washington standard, I would have no choice but to reverse the circuit court’s judgment denying Rule 32 relief on the ground that *336 trial counsel had rendered ineffective assistance to Hinton. It goes without saying that, with knowledge that sufficient funds were available to have a qualified firearms and toolmarks expert, no reasonable criminal defense lawyer would seek out and hire an unqualified firearms witness. Such a lawyer would be charged with the knowledge that in a situation where that witness’s testimony was crucial to the pivotal issue in the case, the witness would be subjected to a withering cross-examination that could ultimately result in the complete impeachment of his or her credibility. In addition, based on the evidence presented at trial, if the testimony or the only physical evidence that connected Hinton to the capital murders was, in fact, presented by a witness who was not competent to render an opinion, then it was useless to him in rebutting the opinions of the State’s experts, thereby resulting in prejudice under the Strickland v. Washington standard.
[[Image here]]
“This is an extremely important case, not only for Hinton and the families of the victims of these horrendous crimes, but also for the people of Alabama, who must have confidence that the criminal justice system is capable of achieving its ultimate purpose — the fair conviction and punishment of the guilty and the protection of the innocent. It is regrettable that the wheels of justice have turned slowly in this case, from the perspectives of both Hinton and the families of the victims. However, as I noted in my special writing in Dowdell v. State, 854 So.2d 1195 (Ala.Crim.App.2002), the orderly processing of cases through the courts is an important value, but it is not the end in itself.
“For these reasons, I would remand this case to the circuit court for a specific finding as to whether Andrew Payne was indeed qualified to testify as an expert firearms and toolmarks examiner based on his knowledge, skill, experience, training, or education. Rule 32.9(d), Ala. R.Crim. P., requires that if an evidentiary hearing is conducted on a Rule 32 petition, ‘[t]he court shall make specific findings of fact relating to each material issue of fact presented.’ A statement of the basis of a circuit court’s decision is essential to afford the appellant due process. See, e.g., Dedeaux v. State, 976 So.2d 1045 (Ala.Crim.App.2005) (remanded for findings on ineffective-assistance claim); Crum v. State, 911 So.2d 34 (Ala.Crim.App.2004) (same); Cain v. State, 876 So.2d 1178 (Ala.Crim.App.2003) (same). I would also authorize the circuit court to hold another evidentiary hearing should it deem it necessary.... Because, in my view, Hinton’s ineffective-assistance claim turns on whether Payne was a qualified firearms and toolmarks expert, that issue should first be addressed by the circuit court. Until that is done, I do not believe that this case is in the right posture for us to decide one way or the other whether the circuit court exceeded its discretion in denying Rule 32 relief.
Hinton, 172 So.3d at 328-32 (citations to record and some footnotes omitted).
We agree with Judge Shaw that “the dispositive issue is whether Payne was a qualified firearms and toolmarks expert” and that in denying Hinton’s Rule 32 petition the trial court did not directly rule on *337 “the issue whether Payne was qualified to be testifying in the first place.”
The State presents an extensive argument in its brief detailing facts and testimony in the record evidencing that Payne was a qualified and competent expert in firearms identification and suggests that this Court could easily make that determination. However, as Judge Shaw notes, Rule 32.9(d), Ala. R.Crim. P., “requires that if an evidentiary hearing is conducted on a Rule 32 petition, ‘[t]he court shall make specific findings of fact relating to each material issue of fact presented.’ ” 172 So.3d at 332. Under the facts of this ease, it would be premature for this Court to examine this issue without the trial court’s first making specific findings. See Ex parte Grau, 791 So.2d 345, 346-47 (Ala.2000) (holding that it would be “premature” to examine a claim of ineffective assistance of counsel where the trial court failed to make specific findings of facts under Rule 32.9(d), Ala. R.Crim. P.).[2]
The judgment of the Court of Criminal Appeals is reversed as to this issue, and the case is remanded for that court to remand the case for the trial court to enter an order pursuant to Rule 32.9, Ala. R.Crim. P., making specific findings as to whether Andrew Payne was indeed qualified and competent to testify as a firearms-identifieation expert based on his knowledge, skill, experience, training, or education. “On remand, the trial court may conduct such further proceedings or take such other evidence as it deems necessary.” Pardue v. State, 793 So.2d 838, 846 (Ala.Crim.App.1998) (emphasis added).
REVERSED AND REMANDED.
SEE, LYONS, WOODALL, STUART, BOLIN, PARKER, and MURDOCK, JJ„ concur.
SMITH, J., concurs specially.
COBB, C.J., recuses herself.

. During the Rule 32 proceeding, Hinton presented testimony from three expert firearms-identification witnesses. All three witnesses were unable to conclude whether or not the bullets recovered from the robberies had been fired from the Hinton revolver.

"[31]The same judge presided over both the trial and the Rule 32 proceedings. For clarity, I will refer to the 'trial court’ when addressing the trial proceedings and to the 'circuit court’ when addressing the Rule 32 proceedings.”

. Our decision should not be interpreted as a decision regarding the merits of Hinton's claim regarding this issue.