PARKER, Justice.
Anthony Ray Hinton petitioned the Jefferson Circuit Court (“the circuit court”) for relief under Rule 32, Ala. R.Crim. P., arguing that his trial counsel had provided ineffective assistance of counsel by failing to provide a qualified expert in his defense at his capital-murder trial. The circuit court denied Hinton’s Rule 32 petition on the basis that Andrew Payne, the expert retained by defense counsel, was qualified to testify as a firearms-identification expert at Hinton’s trial. Hinton appealed to the Court of Criminal Appeals; the Court of Criminal Appeals, after remanding twice for the circuit court to address the issue, affirmed the circuit court’s denial of Hinton’s petition. Hinton v. Alabama, 172 *349 So.3d 338, 340 (Ala.Crim.App.2006) (opinion on return to second remand). Hinton then petitioned this Court for a writ of certiorari to review the Court of Criminal Appeals’ decision. We granted certiorari review to determine whether the Court of Criminal Appeals applied the correct standard of review in affirming the circuit court’s denial of Hinton’s Rule 32 petition.
In its opinion on return to second remand, the Court of Criminal Appeals summarized the relevant procedural history and facts in this case:
“In 1986, Anthony Ray Hinton was convicted of two counts of murder made capital because the murders were committed during the course of a robbery. By a vote of 10-2, the jury recommended that Hinton be sentenced to death, and the trial court accepted the jury’s recommendation and sentenced Hinton to death. Both this Court and the Alabama Supreme Court affirmed Hinton’s convictions and death sentence, Hinton v. State, 548 So.2d 547 (Ala.Crim.App.1988), aff'd, 548 So.2d 562 (Ala.1989), and the United States Supreme Court denied certiorari review. Hinton v. Alabama, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). A thorough statement of the facts is set out in this Court’s opinion affirming Hinton’s convictions and sentence.
“Hinton subsequently filed a timely petition for postconviction relief pursuant Rule 32, Ala. R.Crim. P., challenging his convictions and sentence of death. After conducting an evidentiary hearing, the circuit court denied Hinton’s petition in a written order. This Court affirmed that denial on appeal. Hinton v. State, 172 So.3d 249 (Ala.Crim.App.2006).
“The Alabama Supreme Court granted certiorari review as to one issue: Whether Hinton’s trial counsel was ineffective for not procuring a qualified firearms-identifieation expert to testify in Hinton’s defense. The Court held that it was premature to address the issue because no specific finding of fact had been made by the .circuit court, as required by Rule 32.9, Ala. R.Crim. P., as to whether Andrew Payne, whom trial counsel had procured in Hinton’s defense, was, in fact, qualified as an expert in firearms identification. Ex parte Hinton, 172 So.3d 332 (Ala.2008). The Court quoted then Judge Shaw’s[1] dissent to this Court’s opinion affirming the circuit court’s denial of Hinton’s Rule 32 petition, in pertinent part, as follows:
“ ‘ “After carefully reviewing the briefs and after examining both the record on direct appeal and the Rule 32 record, I am satisfied that there is only one issue that has been properly raised and that merits this Court’s intervention — whether, based on the standard set out in Strickland v. Washington, 466 U.S. 668 (1984), Hinton’s trial counsel rendered ineffective assistance by retaining and proceeding to trial with an unqualified firearms witness.
[[Image here]]
“ ‘ “... I feel that it is premature to reverse the circuit court’s judgment because it does not appear to me, after examining the record on direct appeal and the Rule 32 record, that a specific finding as to whether Andrew Payne was a qualified firearms and toolmarks expert has ever been made.... Payne testified that he was a civil engineer with a military background primarily in heavy weapons and ordnance and that he had had limited experience during his career in *350 toolmarks examination of handguns. To say that Payne was soundly discredited at trial on cross-examination by the prosecutor would be an understatement. However, prosecutors successfully challenge the credibility of even qualified expert defense witnesses in many cases and for many reasons. Therefore, to me it is not dispositive that the- prosecutor successfully challenged Payne’s credibility before the jury. Rather, the dis-positive issue is whether Payne was a qualified firearms and toolmarks expert.
. [T]he trial court never specifically found Payne to be qualified to testify about toolmarks. Likewise, the record of the Rule 32 proceedings also reflects that the circuit court made no specific findings on this question ....
[[Image here]]
“ . The circuit court did not address- directly the issue whether Payne was qualified to be testifying in the first place. Additionally, although the circuit court noted in passing that Payne had ‘been qualified as an expert ballistics witness for several criminal and civil cases in Alabama,’ that statement does not necessarily reflect a finding that Payne was qualified to testify as a toolmarks expert in this case....
[[Image here]]
“ ‘ “If Payne was in fact a qualified firearms and toolmarks expert, even if his qualifications did not néeessarily match up with those possessed by the State’s experts, then I would affirm the circuit court’s judgment denying Rule 32 relief. Sorting out conflicting testimony from qualified experts presented at trial is solely within the province of the jury. Rule 32 is not a mechanism by which those convicted of criminal offenses may argue many years after trial that they now have found better expert witnesses that a newly selected jury should hear. On the other hand, if Payne was not qualified to testify authoritatively as a firearms and toolmarks expert, then, based on the Strickland v. Washington standard, I would have no choice but to reverse the circuit court’s judgment denying Rule 32 relief on the ground that trial counsel had rendered ineffective assistance to Hinton. It goes without saying that, with knowledge that sufficient funds were available to have a qualified firearms and toolmarks expert, no reasonable criminal defense lawyer would seek out and hire an unqualified firearms witness. Such a lawyer would be charged with the knowledge that in a situation where that witness’s testimony was crucial to the pivotal issue in the case, the witness would be subjected to a withering cross-examination that could ultimately result in the complete impeachment of his or her credibility. In áddition, based on the evidence presented at trial, if the testimony or the only physical evidence that connected Hinton to the capital murders was, in fact, presented by a witness who was not competent to render an opinion, then it was useless to him in rebutting the opinions of the State’s experts, thereby resulting in prejudice under the Strickland v. Washington standard.” ’
“Ex parte Hinton, 172 So.3d at 335-36 (quoting Hinton v. State, 172 So.3d 249, 328-31 (Ala.Crim.App.2006) (Shaw, J., dissenting) (footnote omitted)). The Supreme Court then reversed this Court’s judgment and remanded the case for this Court to remand the case ‘for the trial court to enter an order pursuant to *351 Rule 32.9, Ala. R.Crim. P., making specific findings as to whether Andrew Payne was indeed qualified and competent to testify as a firearms-identifieation expert based on his knowledge, skill, experience, training, or education.’ Ex parte Hinton, 172 So.3d at 337.
“On December 19, 2008, this Court remanded this case to the circuit court for proceedings consistent with the Alabama Supreme Court’s opinion. Hinton v. State, 172 So.3d 338 (Ala.Crim.App.2008) (opinion after remand from the Alabama Supreme Court). The circuit court then conducted a hearing and issued a written order purporting to comply with the Supreme Court’s opinion and submitted its return to remand. This Court permitted the parties to file briefs on return to remand. After carefully examining the parties’ briefs, the proceedings on remand, and the circuit court’s order on remand, this Court concluded that the circuit court had failed to comply with the Alabama Supreme Court’s opinion. Instead of ‘making specific findings as to whether Andrew Payne was indeed qualified and competent to testify as a firearms-identification expert based on his knowledge, skill, experience, training, or education,’ Ex parte Hinton, 172 So.3d at 337, the circuit court appeared to disagree with the Supreme Court’s conclusion that no finding had been made regarding whether Payne was qualified as an expert in firearms identification and issued a written order quoting various portions of the transcript from Hinton’s trial and the transcript from the evidentiary hearing on Hinton’s Rule 32 petition and concluding that the original trial judge who had presided over Hinton’s trial and the initial Rule 32 proceedings had, indeed, found Payne to be a qualified expert, albeit implicitly.[2] The circuit court made no independent findings of fact. regarding whether Payne was qualified as an expert in firearms identification.
“Thereafter, this Court remanded this case a second time by order for the circuit court to comply with the Supreme Court’s opinion and to make specific findings as to whether Payne was qualified to testify as a firearms-identification expert. On second remand, the circuit court complied with the Supreme Court’s opinion and issued a written order finding that Payne was, in fact, a qualified expert in firearms identification and submitted its return to second remand. In its order on return to second remand, the circuit court made the following findings:
‘The court makes the following findings of fact from the trial testimony:
“ ‘1) During his service in the Air Force Mr. Payne was an instructor in the gunnery program and worked on “development research of guns”;
“ ‘2) Throughout his 30 year career with the Air Force, Mr. Payne was involved with the design of gun barrels;
“‘3) During his Air Force Career Mr. Payne was involved with the testing of firearms and bullets on a daily basis;
“ ‘4) During his Air Force career he examined bullets fired from machine guns and examined bullets fired from handguns on a regular basis;
“ ‘5) During the 1950’s he served on the weapons evaluation board of the Air Force and examined fired bullets approximately 6000 times;
“ ‘6) He worked at the Pentagon as the “technical assistant to the deputy chief of staff for research and *352 technology” which included research and design of all weapons, non-nuclear;
“ ‘7) He was a member of the American Academy of Forensic Sciences through which he received all publications of the criminalistics branch which included firearms identification;
“ ‘8) Throughout his career he learned how “barrels and bullets put toolmarks on one another”;
“ ‘9) Prior to his examination of Hinton’s gun he had viewed bullets under a comparison microscope “thousands” of times;
“ 10) Throughout his career he spent much of his time matching ammunition back to a particular gun barrel. Even more specifically Payne had spent six to nine months of his career involved 100 per .cent of the time “specifically matching a projectile to a barrel”; and
“ 11) Payne had previously been qualified as an expert witness in both civil and criminal courts in Jefferson County.
“ ‘Therefore, based on the ... law, which was in effect at the time of Mr. Hinton’s trial[3] and the findings of fact from that trial this Court finds and therefore rules that Mr. Andrew Payne was an expert witness when he testified during said trial in September 1986 due to the fact that he clearly had more experience and knowledge in the area of firearms and toolmarks comparisons than that of the average lay witness or juror.’
Hinton, 172 So.3d at 340-43 (references to the record omitted).
Applying an “abuse-of-discretion” standard of review, which this Court refers to as an “exeeeds-its-discretion” standard, see CIT Commc’n Fin. Corp. v. McFadden, Lyon & Rouse, L.L.C., 37 So.3d 114, 121 n. 5 (Ala.2009), the Court of Criminal Appeals concluded that the circuit court did not exceed “its discretion in finding that Payne was qualified as an expert in firearms identification.” 172 So.3d at 347.
Before this Court, Hinton, claiming conflict with Jackson v. Strickland, 808 So.2d 993 (Ala.2001), and Eldridge v. Loftis, 723 So.2d 562, 564 (Ala.1998), argues that the Court of Criminal Appeals “erred in reviewing the circuit court’s findings for abuse of discretion where the circuit court’s findings were based solely on a review of the appellate record.” Hinton’s brief, at p. 6. Hinton also argues that “Alabama law is well-settled that where a trial court does not receive evidence ore tenus, but instead makes its judgment based on the cold trial record, no presumption of correctness applies to the trial court’s conclusions and the appellate court must review the evidence de novo.” Hinton’s brief, at p. 6.
*353 In the present case, the circuit court did indeed base its determination that Payne was qualified to testify as an expert upon the “cold trial record.” As a result, it was in no better position than was an appellate court to make the determination it made. Accordingly, the Court of Criminal Appeals erred in applying the abuse-of-discretion standard of review. We reverse its judgment and remand the case to the Court of Criminal Appeals for it to apply a de novo standard of review in reviewing the circuit court’s judgment that Payne was qualified to testify as a firearms-identification expert.
REVERSED AND REMANDED.
MALONE, C.J., and WOODALL, STUART, BOLIN, and MURDOCK, JJ., concur.
SHAW, J., concurs in the result.
MAIN and WISE, JJ., recuse themselves.*
SHAW, Justice
(statement of nonrecusal).
I was a member of the Court of Criminal Appeals when it issued its April 28, 2006, opinion in Hinton v. State, 172 So.3d 249 (Ala.Crim.App.2006). I dissented as to any holding on the issue whether Anthony Ray Hinton’s trial counsel was ineffective for not procuring a qualified firearms-identification expert to testify in Hinton’s defense, because I believed that the issue was not properly before the court:
“Because, in my view, [the] ineffective-assistance claim turns on whether [Andrew] Payne was a qualified firearms and toolmarks expert, that issue should first be addressed by the circuit court. Until that is done, I do not believe that this case is in the right posture for us to decide one way or the other whether the circuit court exceeded its discretion in denying Rule 32[, Ala. R.Crim. P.,] relief.”
172 So.3d at 332. I did not dissent because I disagreed with the court’s decision on whether the trial court had erred; instead, I declined to review the trial court’s judgment on this issue until a determination had been made by the trial court as to whether Andrew Payne was a firearms-identification expert. I expressed no opinion as to whether Hinton was entitled to relief under Rule 32, and I expressed no opinion as to whether Payne was in fact qualified.
The Alabama Supreme Court subsequently granted certiorari review as to the issue whether Hinton’s trial counsel was ineffective for not procuring a qualified firearms-identification expert and agreed “that it was premature to address the issue because no specific finding of fact had been made by the circuit court, as required by Rule 32.9, Ala. R.Crim. P., as to whether Andrew Payne, whom trial counsel had procured in Hinton’s defense, was, in fact, qualified as an expert in firearms identification.” Hinton v. State, 172 So.3d 338, 340 (Ala.Crim.App.2006) (opinion on return to second remand) (citing Ex parte Hinton, 172 So.3d 332 (Ala.2008)). A decision on the issue has now been rendered by the trial court. Although no party has asked me to step aside, I must determine whether, as an Associate Justice of the Alabama Supreme Court, I may sit in this case, given that it was previously before me when I was a judge on the Court of Criminal Appeals.
*354 “The law of recusal reflects two fundamental judicial policies: First, it is the duty of a judge to decide cases. Second, a judge should be a neutral, or impartial, decision-maker.” Dunlop Tire Corp. v. Allen, 725 So.2d 960, 976 (Ala.1998) (See, J., statement of nonrecusal). I am required by my oath of office and by the Alabama Constitution to decide the cases before me. See Ala. Const.1901, § 139(a) (Off. Re-comp., formerly Amend. 328, § 6.01(a)) (“[T]he judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of a supreme court....”); Ala. Const.1901, § 279 (requiring “all officers, executive and judicial, ... [to] take the following oath or affirmation: T, _, solemnly swear ... that I will support the Constitution of the United States, and the Constitution of the State of Alabama ...; and that I will faithfully and honestly discharge the duties of the office upon which I am about to enter’”); and Federated Guar. Life Ins. Co. v. Bragg, 393 So.2d 1386, 1389 (Ala.1981) (“‘[I]t is the duty of the judge to adjudicate the decisive issues involved in the controversy ... and to make binding declarations concerning such issues, thus putting the controversy to rest....’” (quoting 26 C.J.S. Declaratory Judgements § 161 (1956), pp. 374-75)).
I note that Canon 3C(1), Ala. Canons of Jud. Ethics, states: “A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned. ...” Further, Ala. Code 1975, § 12-1-13, provides:
“No justice of the Supreme Court or judge of a Court of Appeals of Alabama shall participate in the decision of any case in the Supreme Court or a court of appeals appealed to said court from any lower court of the State of Alabama, of which lower court said justice was judge at the time said case was decided and who presided at the trial of said case in said lower' court.”
This Code section, by its plain language, forbids an appellate court judge from participating in a case in which that judge “presided at the trial of [the] case in [the] lower court.” It cannot apply to a Justice of the Supreme Court sitting in a case appealed from either of our courts of intermediate appeals, because judges on those courts do not “preside” oyer “trials.” Stated differently, the Code section does not forbid a Justice of the Supreme Court, who was previously a member of one of the intermediate courts of appeals, from participating in a case that was before him or her when the Justice was a member of that lower appellate court, because the Code section forbids participation in a case only where the Justice, as a member of a “lower court” “presided at the trial” of the case. Thus, § 12-1-13, on its face, does not forbid my participation in the instant case.
Section 12-1-13 is similar to 28 U.S.C. § 47, which states: “No judge shall hear or determine an appeal from the decision of a case or issue tried by him.” In describing this federal law, applicable to judges of the federal courts of appeals, it has been stated:
“To say the least, it would be unbecoming for a judge to sit in a United States Court of Appeals to participate in the determination of the correctness, propriety and appropriateness of what he did in the trial of the case. After rendering decisions, some judges remain open minded, and some are unreluctant to confess previous error, but a reasonable person has a reasonable basis to question the impartiality of a judge who sits in a United States Court of Appeals to review his own decision as a trial judge.”
*355 Rice v. McKenzie, 581 F.2d 1114, 1117 (4th Cir.1978). The principle that a judge must recuse himself or herself in an appeal where the judge ruled in the case while a member of a lower court has been held not to apply if the issue on appeal is different from the issue ruled upon below. See generally Delaney v. United States, 263 U.S. 586, 589, 44 S.Ct. 206, 68 L.Ed. 462 (1924) (holding that a former district court judge serving on the court of appeals was not disqualified from sitting on a case where “there was no question before the circuit court of appeals that had been considered by [the judge] in the District Court”); United States v. Perlstein, 126 F.2d 789, 806 (3d Cir.1942) (holding that a former district court judge sitting on an appeal before the circuit court of appeals was not disqualified because “no ruling or action of [the judge] ... is in any way involved by the present appeal to this court”); and Lee v. United States, 91 F.2d 326, 332 (5th Cir.1937) (holding that the statute prohibiting a judge before whom a cause was tried in the district court from sitting on an appeal to the court of appeals did not apply because the question considered and decided by the judge in the district court “was not presented on this appeal at all”). See also Poorman v. Commonwealth, 782 S.W.2d 603, 605-06 (Ky.1989) (holding that “the major premise that a ‘judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned’ ” and not sit in review of a case previously decided by him “must be given common-sense application” and did not apply to that judge now sitting on a higher court where there “was no issue on appeal directly or indirectly involving” the judge’s prior decision on the lower court). ,
Participation in the instant case does not involve a determination of the correctness, propriety, or appropriateness of what I did as a member of the Court of Criminal Appeals in Hinton v. State, because we are now faced with an issue that had not been decided by the trial court in the case that was before the Court of Criminal Appeals while I was serving on that court.- My impartiality cannot be questioned because I am not called upon to review my prior decision — the issue whether Payne was qualified was not before me then, as the Supreme Court confirmed in Ex parte Hinton, and I expressed no opinion as to it.

“ kludge Shaw is now an Associate Justice on the Alabama Supreme Court.

“ [2]The circuit judge who presided over Hinton’s trial also conducted the initial evidentiary hearing on Hinton’s Rule 32 petition and issued the initial written order denying Hinton’s petition. However, that judge retired while Hinton’s case was on appeal, and a different circuit judge inherited the case on remand.

“ [3]Rule 1103, Ala. R. Evid., provides, in relevant part, that ‘these rules shall apply if the proceeding begins on or after January 1, 1996.’ Because Hinton’s trial occurred some 10 years before the Alabama Rules of Evidence became effective, those rules are inapplicable here.”