37 So.2d 640

**STATE v. ALBRITTON et al.**

I Div. 348.

Supreme Court of Alabama.

Dec. 1, 1948.

Rehearing Denied Dec. 3, 1948.

Ira B. Thompson, of Luverne, and Files Crenshaw and Jack Crenshaw, both of Montgomery, for petitioner.

Sam M. Johnston, of Mobile, John W. Lapsley, of Selma, Frank J. Mizell, Jr., of Montgomery, and Johnston, McCall & Johnston, of Mobile, for respondents.

PER CURIAM.

This is an original application by the State of Alabama, in its corporate capacity (59 C.J. p. 316, § 470; State of Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511), the filing of which is authorized by the governor in writing, against the respondents for the issuance of the common law writ of certiorari to review the announcement made by the respondents while running as candidates for presidential electors before the people in the primary election held by the Democratic Party of Alabama through and by authority of its central committee, announced and promulgated as political propaganda for the information of the people, to the effect that if nominated and elected they would not cast their ballot for Harry S. Truman, for President of the United States, if he was nominated by the National Democratic Convention on a platform advocating or pledging enactment of law denying to the states the right to regulate race segregation and advocating social equality between the races, which said announcement was also published prior to the General Election on November 2, 1948, as political propaganda by such individual candidates; and in the alternative for the issuance of a writ of injunction or such other extraordinary writ as the court may deem mete and proper, restraining said respondents from casting their votes as presidential electors for J. Strom Thurmond or "such other appropriate order or writ as the unusual circumstances and magnitude of the problem may require."

After notice by petitioner to the respondents that the petition would be presented to this court on a named date, the respondents appear and join in an answer challenging

the jurisdiction of the court to entertain the petition under § 140 of the Constitution; the right of the state to maintain the petition and the authority of the court to issue such writs to restrain the respondents from exercising their judgment and discretion in casting their votes as presidential electors on the ground that they are exercising political and not judicial power.

In the petition the case of Ex parte Alabama Textile Corp., 242 Ala. 609, 7 So.2d 303, 141 A.L.R. 87, is relied on as authority for the issuance of the writ of certiorari. It is sufficient answer to render said authority inapt to state that the petition in that case sought review of judicial action taken by the appeal tribunal and board of appeal of the department of industrial relations as an inferior tribunal vested with judicial or quasi judicial power.

■ The petitioner also cites §§ 17 and 18, Title 13, Code of 1940. Section 17 provides inter alia: "The supreme court has authority: * * * to issue writs of injunction, habeas corpus, and such other remedial and original writs as are necessary to give to it a general superintendence and control of inferior jurisdiction." Section 18 provides that the justices of the supreme court "have each of them authority to issue writs of certiorari, injunction and supersedeas, subject to the limitations prescribed by this Code, as judges of the circuit courts are authorized to grant the same." It is clear from section 17 that the justices of the supreme court are limited in the issuance of these extraordinary writs as necessary to give general superintendence and control of inferior jurisdictions. That is, to supervise persons and bodies clothed with judicial power in the exercise thereof. Section 18 also grants limited power to the justices of the supreme court to grant injunctions, such as judges of the circuit court are authorized to grant.

Section 235, Title 17, Code of 1940 provides: "No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any cause or proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process, order, or decree from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned, or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void, and shall not be enforced by any officer or obeyed by any person; and should any judge or other officer hereafter undertake to fine, or in any wise deal with any person for disobeying any such prohibited injunction, process, order, or decree, such attempt shall be null and void, and on appeal shall lie forthwith therefrom to the supreme court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal; and the notice to be given of such appeal shall be five days."

■ It is also well settled that, "At common law and under the practice in most jurisdictions, the writ of certiorari will lie to review only those acts which are judicial or quasi judicial in their nature. It does not lie to review or annul any judgment or proceeding which is legislative, executive or ministerial rather than judicial. The writ does not lie to review the action of an inferior tribunal or board in the exercise of purely legislative functions. * * *." 10 Am.Jur., § 10, p. 533. Nor does it lie to review or control issues of purely political nature. Colegrove et al. v. Green et al., 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432.

■ This court in interpreting and applying § 549, Code of 1923, now § 235, Title 17, Code of 1940, involving matters of a political nature, observed: "We are confronted at the very threshold of the case with the question of jurisdiction of a court of equity to interfere in such matters, and it is of no consequence that the parties have not stressed the point, and invite the court to consider the case on what they consider to be its merits. The question of jurisdiction is always fundamental. It would amount to usurpation and oppression for a court to interfere in a matter over which it has no jurisdiction, and its pronouncements in respect thereto would be without

force, and its decrees and judgments would be wholly void. This is a universal principle, as old as the law itself; hence the question of jurisdiction is a question of primary importance in every case, and, if there is an absence of jurisdiction over the subject-matter, this ends the inquiry; it cannot be waived or supplied by consent. 7 R. C.L. 1029, §§ 57, 59 and 70; Power, Secretary of State, v. Ratliff et al., 112 Miss. 88, 72 So. 864, Ann.Cas.1918E, 1146; City Council of McAlester v. Milwee, 31 Okl. 620, 122 P. 173, 40 L.R.A.,N.S., 576. Professor Pomeroy, in his work on Equity Jurisprudence, recognized as an authority in all jurisdictions, states the rule thus: 'An injunction will not issue, as a general rule, for the purpose of restraining the holding of an election, or directing or controlling the mode in which, or determining the rules of law in pursuance of which, an election shall be held. An election is a political matter, with which courts of equity have nothing to do. Moreover, the effect of interference in such matters might often result in the destruction of the government. This is especially so when the relief is sought to prevent the holding of an election. "The attempt to check the free expression of opinion—to forbid the peaceable assemblage of the people—to obstruct freedom of elections if successful, would result in the overthrow of all liberty regulated by law. The mere effort to assume such power is dangerous to the rights of the citizen. If the courts can dictate to the officers of' the people that they shall not hold an election from fear of some imaginary wrong, then people and officers are entirely subservient to the courts, and the consequences are too fearful to contemplate." Thus, an injunction will not issue to restrain the holding of an election although it is alleged that it is without authority of law, or that the act authorizing it or providing for apportionment is unconstitutional. And the mere fact that the cost of the election will have to be borne by the state and indirectly by the tax-payers is no ground for an injunction at the relation of a tax-payer for the injury is too trifling.' 4th Edition Pomeroy's Equity Jurisprudence, vol. 4, § 1753, page 4067.

"Again to quote from 10 Ruling Case Law, page 342, § 92: 'Matters of a political character are also outside the pale of a court of equity, no such jurisdiction having ever been conceded to a chancery court, either in a federal or state judiciary, unless it is so provided expressly or impliedly by organic or statute laws. The political rights of a citizen are as sacred as are his rights to personal liberty or property, but he must go to a court of law for them. A court of equity is a one-man power, wielding the strong force of injunction, often issued at chambers, and on ex parte hearing. Neither in England nor America has this power been suffered to extend to political affairs.' This text is supported by a host of authorities cited in note 9, among others Giles v. Harris, 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909, which involved the validity of the article on suffrage in the Alabama Constitution of 1901." Wilkinson v. Henry, County Treasurer, 221 Ala. 254, 128 So. 362, 364, 70 A.L.R. 712.

This statement is also supported by High on Injunctions, 4th Ed., Vol. II, 1316, p. 1333, rested in part on our case of Jones v. Black, 48 Ala. 540.

Other authorities cited by the petitioner have been examined but we do not consider them apt. Section 17, Title 3, U.S.C.A., provides a complete remedy for contesting irregularity of casting votes by presidential electors.

We are also clear to the conclusion that the state in its corporate capacity is without interest in the controversy presented by the petition in this case. 59 C.J. p. 316, § 470; State of Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511.

Our conclusion, therefore, is that the petition fails to present a controversy within the jurisdiction of the court and we decline to take jurisdiction of the controversy.

Petition dismissed.

BROWN, FOSTER, LIVINGSTON, SIMPSON, and STAKELY, JJ., concur.

LAWSON, J., concurs in the result.