PER CURIAM.
In the June 24, 1986, Democratic run-off primary, Charles A. Graddick and William J. Baxley were the contending candidates for the Democratic nomination for Governor. On Saturday, June 28, John Baker, Chairman of the State Democratic Executive Committee (SDEC) announced the completion of the vote tally in the run-off primary election and that tally showed that Graddick was the winner by 8,756 votes. On or about noon on June 80, 1986, a subcommittee of the SDEC declared the results of the election at the State Capitol in Montgomery, according to Code 1975, § 17-16-35.
On or about 9:30 a.m. on July 1, 1986, Baxley filed a contest of the primary election with the SDEC pursuant to Code 1975, § 17-16-70. This contest alleged maleon-duct by Graddick and his campaign, conspiracy, and illegal votes — all in violation of Code 1975, § 17-16-71(1), (3), and (5).
Before Baker announced the results of the tally on June 28, Kennith Pike and Nellie Pike, on that same day at 10:25 a.m., filed a contest of the election alleging that illegal votes had been cast.
In response to the contests, Baker appointed a subcommittee to hear and determine them.
On July 1, Graddick filed a motion with the SDEC to dismiss the contests. On July 14, 1986, the Democratic subcommittee held the first hearing on the Pike and Bax-ley contests, but did not rule on Graddick’s motion to dismiss the contests. It set its next meeting for July 21, 1986, but that meeting was continued until July 28, 1986.
On July 24, Graddick filed a petition for a temporary restraining order, a writ of prohibition, and other extraordinary and equitable relief against Baker, the SDEC, the Pikes, Baxley, and members of the subcommittee appointed by Baker to hear the contest. The petition sought to halt the election contest proceeding and all discovery by Baxley. Judge Jack Carl issued ex parte a temporary restraining order forbidding the SDEC from holding hearings on the contests and stopping depositions scheduled by Baxley. The other defendants were likewise enjoined. The court set a hearing on the petition on July 29. This Court issued an order staying the temporary restraining order and requiring Judge Carl to conclude the matter and issue a final order by 5 p.m. on July 31. On July 31, Judge Carl entered a judgment finding in favor of Graddick and against the defendants.
The defendants appealed this judgment and also filed a motion to vacate the judgment.
*690 Judge Carl made no findings of fact nor did he state any conclusions of law. He merely held in favor of Graddick. Grad-dick’s petition sought to halt the election contest proceeding before the SDEC subcommittee on four grounds.
I.
First, Graddick contends that the contests were untimely under Code 1975, § 17-16-70 (amended 1979), which provides that “all nominations made by primary election may be contested within 24 hours after the results of the primary election have been declared, weekends excluded....”
The Baxley Contest. Graddick argues that the 24-hour period for contesting the election commenced at the time Baker announced the results of the tally on Saturday, June 28, and that Baxley’s contest filed on July 1 came too late. We reject that argument. Baker’s announcement of the results of the tally of the returns is not the declaration required by the governing statute. Code 1975, § 17-16-70 requires, and all parties agree, that contests of primary elections must be made “within 24 hours after the results of the primary election have been declared_” Section 17-16-35 requires that the final results of a primary election be declared not later than noon on the Monday following the primary election, at which time “the state executive committee ... shall meet at the state Capitol in Montgomery and receive said returns ... and publicly declare on that day the results thereof....” Thus, the SDEC is required to make a public declaration of the results. The chairman appointed a subcommittee of the SDEC, which did meet in the Secretary of State’s office at the state Capitol at noon on Monday, June 30. It filed a declaration at that time. The nominee for office of Governor was not certified, but the document explained that because a contest had been filed and not resolved, a nominee was not certified and no vote totals were stated. Baker testified that legal counsel had advised this course of action. Inasmuch as the total figures had been previously publicly announced, we hold that this substantially complies with § 17-16-35. This statute and § 17-16-70 must be read in pari materia. Doing so eliminates uncertainty which could result from statements made by the chairman and establishes a time certain for the commencement of the 24 hours in which to contest a primary election. We hold that Baxley’s contest is timely, having been filed within 24 hours of the declaration of the result.
The Pike Contest. Graddick argues that this contest is untimely because he says it was prematurely filed. We agree that it was prematurely filed but do not agree that this destroyed its effect. It remained filed and was on file with the SDEC when the formal declaration was made as required by § 17-16-35. Therefore, it too was timely. There is no requirement that a pleading, although prematurely filed, be re-filed if it is on file at the time required for filing. See Foster v. Greer & Sons, Inc., 446 So.2d 605 (Ala.1984).
II.
Graddick next contends that the SDEC has not complied with § 17-16-85, and, therefore, that it has lost jurisdiction to hear the contest. He says that the statute requires that the contest be heard and decided not less than 10 nor more than 20 days after the contest is filed. Section 17-16-85, in its entirety, provides:
“The state executive committee shall, upon the filing of a contest with the chairman, be called by such chairman to meet at a time not less than 10 days nor more than 20 days from the time of filing such contest for the purpose of hearing and determining the same, or without calling the committee to meet, the chairman may appoint a subcommittee as herein provided for.”
This statute authorizes the chairman either to call a meeting of the state executive committee to meet not less than 10 days nor more than 20 days to hear the contest *691 or to appoint a subcommittee. In this case, the chairman appointed a subcommittee 2 days after the Pike contest was filed; the subcommittee met on July 14, which is more than 10 days and less than 20 days from the date the contests were filed. Since that time, the committee has scheduled other hearings. Any delay in conducting these hearings has in large part been caused by court orders obtained by Grad-dick and issued by the trial court without authority and in express violation of statutory and case law. Code 1975, § 17-15-6; State v. Albritton, 251 Ala. 422, 37 So.2d 640 (1948); Ex parte State ex rel. Tucker, 236 Ala. 284, 181 So. 761 (1938).
Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974), held that in a primary election contest it is mandatory that the chairman comply with § 17-16-85 by setting the date for the subcommittee to hear the contest. Here, the chairman did so. The contest was filed on July 1. A hearing was set for July 14. That hearing was held and others were scheduled. In Perloff, the Court stated:
“After that initial meeting, the schedule of hearings and proceedings may be set by the committee and the interested parties, but the time limit is jurisdictional because there can be no contest until the hearings begin and the first hearing must be held within twenty days after the filing of the contest.” (Emphasis added.)
293 Ala. at 281, 302 So.2d at 96.
This has been done here. Obviously, the legislature could not have intended to require that all primary election contests be concluded within twenty days of the filing of the contest. Many of our cases have commented on the obvious desirability of resolving such matters as expeditiously as possible, but it is certainly not mandated that the entire matter be determined within 20 days.
III.
Graddick next argues that the SDEC is without authority to act through subcommittees in election contests because Title 17, § 394, of the 1940 Code, which expressly authorized the appointment of a subcommittee, is no longer in the Alabama Code. This argument is without merit.
Prior to 1975, Alabama law provided: “The state executive committee ... of any political party shall have the right, power, and authority to appoint, or to authorize and empower the chairman thereof to appoint ... a subcommittee ... to hear, consider, and decide any contest of any election ... and generally to delegate to and confer upon such subcommittee the right, power, and authority to do and perform any act or thing which such executive committee could do or perform. The chairman of a subcommittee shall also have and be authorized to perform any act, and exercise any power or authority which the chairman of such executive committee has or could exercise under this chapter.”
Code 1940, Title 17, § 394. Section 394 was enacted in 1931, along with the other provisions now at Code 1975, § 17-16-70 et seq. (Article 2, “Contests of Elections”). The statute also appeared in the 1958 Recompiled version of the 1940 Code and in the 1973 Cumulative Pocket Part to that code. This Court had upheld and construed § 394 in several cases. See, e.g., Bridges v. McCorvey, 254 Ala. 677, 49 So.2d 546 (1950); Prather v. Ray, 258 Ala. 106, 61 So.2d 46 (1952); Ex parte Skidmore, 277 Ala. 221, 168 So.2d 483 (1964). The legislature, however, repealed § 394 in 1975.
Nonetheless, according to the 1975 Code, a subcommittee may still be appointed to hear primary election contests. Code 1975, § 17-16-85, provides:
“The state executive committee shall, upon the filing of a contest with the chairman, be called by such chairman ... for the purpose of hearing and determining the same, or, without calling the committee to meet, the chairman may appoint a subcommittee as herein provided for.” (Emphasis added.)
We note that while repealed § 394 authorized the executive committee either to *692 appoint subcommittees to hear primary election contests or to empower the chairman to do so, Code 1975, § 17-16-85, directly authorizes the chairman to appoint such a subcommittee. Furthermore, several of the contest statutes in the 1975 Code still refer to such a subcommittee. Code 1975, § 17-16-74, provides:
“In the hearing of any contest before any committee or subcommittee under the provisions of this article, such committee ... shall have authority to summon witnesses to appear before it, or before any subcommittee appointed by it, in the hearing of any contest pending before such committee....” (Emphasis added.)
Code 1975, § 17-16-76, provides:
“The chairman of any committee or subcommittee before which may be pending any contest as herein provided shall have authority to administer oaths to witnesses in such contests and to summon persons and officers to be and appear before such committee or subcom-mittee_” (Emphasis added.)
Code 1975, § 17-16-84, provides:
“... It shall be the duty of the sheriff to serve all process issued by the circuit clerk and execute all orders and processes of the executive committee or subcommittee trying the contest. Such executive committee or subcommittee shall have the same power and authority as the circuit judges of this state to enforce obedience to its orders_ Such executive committee or subcommittee shall ... have the power to require any person to produce before it papers or documents pertinent to any inquiry before such executive committee or subcommittee. ” (Emphasis added.)
Therefore, we hold that § 17-16-85 provides sufficient statutory authority for the appointment of a subcommittee to hear the contest.
IV.
The legislature has granted the exclusive jurisdiction to hear such primary election contests to the political party which conducts the primary. Once a contest is filed with that party, invoking its jurisdiction, the courts are without authority to intervene. In Ex parte State ex rel. Bragg, 240 Ala. 80, 197 So. 32 (1940), this Court held that where a contest of a primary election alleged that illegal votes were cast, such an allegation was sufficient to invoke the jurisdiction of the political party and its jurisdiction was exclusive. The Court stated:
“In the matter of contests of primary elections the Legislature has deemed it wise to commit same to party tribunals. This is in recognition of the interest and concern which the party, the associated group of citizens acting together as such, have in the selection of their political representatives, put forward as nominees, recommended for election to public office. The courts scrupulously avoid interfering with political action of this sort. Smith v. McQueen, 232 Ala. 90, 166 So. 788; Lett v. Dennis, Chairman, etc., 221 Ala. 432, 129 So. 33.
“Clearly enough, and it does not seem to be questioned, that if the Executive Committee has jurisdiction of this contest, the circuit court has no jurisdiction to interfere with its exercise of that jurisdiction. Since we hold the committee has acquired jurisdiction, it follows the circuit court is without jurisdiction to entertain and grant the relief sought by con-testee.
“But, it is said the circuit court had the right to pass upon the question of its jurisdiction; that the rule nisi was properly issued to give a hearing on that question; that presumably a correct ruling will be made; and this court should not intervene in advance of a hearing in the circuit court.
“Such is the general rule. Ex Parte Boothe et al., 64 Ala. 312. But such rule has exceptions. Its application is a matter of discretion, as justice shall indicate. Ex Parte State ex rel. Knight, Attorney General, 229 Ala. 513, 516, 158 So. 317. Such rule cannot be invoked where by an ex parte order the circuit court has de *693 nied the like power of the committee to pass on its jurisdiction in due course.
“The circuit judge has already entered a restraining order forbidding the committee to hear the contest within the time contemplated by the statute, and to await his decision whether he will prohibit all further action by the committee.
“He had no jurisdiction thus to interfere with the contest before the subcommittee. His order was void; the petition presented to him conferred no jurisdiction to enter any order interfering with the proceedings by the committee. He can make no valid order in the proceedings before him save to dismiss it. Prohibition is the proper remedy to intercept and put an end to usurpation of jurisdiction. Ex Parte State ex rel. Bailes, 235 Ala. 133, 177 So. 752; Ex Parte Blue, 218 Ala. 113, 118 So. 147; Strother et al. v. McCord, Circuit Judge, 222 Ala. 450, 132 So. 717.”
240 Ala. at 85, 197 So. at 36.
The case before us is indistinguishable and we hold that because the SDEC had acquired exclusive jurisdiction of this contest, the circuit court was without authority to enjoin its proceedings. See Ex parte Skidmore, 277 Ala. 221, 168 So.2d 483 (1964).
For over 50 years, the courts in this state have adhered to the legislative mandate that political parties are empowered to settle their own disputes in primary elections. The same rules apply regardless of the office involved. The statutory scheme was first enacted in 1931 and bestowed on political parties in primary election contests subpoena power and prehearing discovery authority which the circuit courts did not have for 40-odd years thereafter. The legislature recognized that these disputes require an early resolution and it gave the political parties the tools to resolve them. It vested in political parties in primary disputes quasi-judicial authority and such discretion as courts of limited jurisdiction exercise. The legislature intended to make it difficult to win primary election contests, but not impossible, and it certainly gave the parties to the contest a right to be heard.
We are aware of the remedy fashioned by the three-judge federal court under the Voting Rights Act, 42 U.S.C. § 1973c, in Henderson v. Graddick, 641 F.Supp. 1192 (1986, M.D.Ala.). Also, Alabama Code, § 17-16-87, authorizes the following:
“If, upon hearing of any contest for any office, as provided for in this article, the committee, after an investigation and hearing of the contest, shall determine that it is impossible from the evidence before it to decide who is the legally nominated candidate for the office contested, it shall have the right and authority to direct a new primary for the nomination to any such office.”
We vacate the judgment of the trial court and direct the SDEC to proceed with a resolution of this matter without further delay.
JUDGMENT VACATED.
JONES, ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., concurs specially with opinion in which HOUSTON, J., concurs.
MADDOX, J., concurs specially.
BEATTY, J., not sitting.