SHAW, Justice
(dissenting).
I do not believe that this case can be filed in this Court at this time; as discussed below, I do not believe that this Court yet has jurisdiction.
It is unfortunate that the federal judiciary has refused to stay the order striking down Alabama’s marriage-protection laws until the Supreme Court of the United States' can conclusively rule on the issue within the next few months. The federal district court’s order did nothing less than change the very definition of the institution of marriage in Alabama. Such a drastic change in Alabama law warranted.the granting of a stay. The lack of a stay has resulted in much unnecessary confusion and costly litigation. Because I do not believe the case before this Court is properly filed, I cannot, at this time, express my opinion as to whether the federal court’s decision was correct.
Against this backdrop, I write to express my concern that, in an attempt to reduce confusion and to restore order, the main opinion has deviated from certain principles of law that undermine its rationale for assuming jurisdiction of, and extending relief to, the petitioners here. This deviation from the law, I fear, will have unforeseen consequences in future cases. For that reason, I cannot join the main opinion. My concerns are as follows:
1. This Court does not have jurisdiction in this case.
Normally, this Court hears appeals from lower court decisions. Here, public-interest groups have filed a petition directly with this Court in an attempt to invoke its “original” jurisdiction, which is rare. “Original jurisdiction” is “[a] court’s power to hear and decide a matter before any other court can review the matter.” Black’s Law Dictionary 982 (10th ed.2014).
This Courts original jurisdiction is described in the Constitution: “The supreme court shall have original jurisdiction ... to issue such remedial writs or orders as may be necessary to give it general supervision and control of courts of inferior jurisdiction— ” Ala. Const.1901, Art. VI, § 140(b)(2) (emphasis added). Alabama Code 1975, § 12-2-7(2), states that this Court has authority to exercise “original jurisdiction” in determining and issuing units of mandamus in matters where “no other court has jurisdiction.” So, if another court has jurisdiction over this mandamus petition, the plain language of § 12-2-7(2) provides that this Court cannot exercise original jurisdiction. Circuit courts are courts of general jurisdiction whose judgments may be appealed to this Court and that, under § 12-2-7(2), cannot be bypassed. This Court is applying a different rule in this case.
This Court routinely hears petitions challenging a lower court’s decision in a pending case; this does not constitute hearing a matter “before another court” gets that opportunity and is not an exercise of original jurisdiction. Alabama Code 1975, § 12-2-7(3), states that this Court has authority to issue “remedial and original writs as are necessary to give to it a general superintendence and control of courts of inferior jurisdiction.” There is no indication in the plain language of this Code section that the reference to “original writs” encompasses “original jurisdiction”; rather, the language refers to writs that review interlocutory decisions of the lower courts:
“Other procedures by which decisions of a supervised court are brought to a supervising court for review are provided by the writs of certiorari, mandamus, and prohibition. Known variously as ‘prerogative writs,’ ‘peremptory writs,’ ‘extraordinary writs,’ ‘supervisory writs,’ and ‘original writs,’ these writs are not, *554 when, appropriately employed, alternatives to appeal, but’ lie under circumstances in which an appeal does not lie. One or another of these writs can, under prescribed circumstances, be used to invoke supervisory review of interlocutory decisions that could not be appealed.”
Jerome A. Hoffman, Alabama Appellate Courts: Jurisdiction in Civil Cases, 46 Ala. L.Rev, 843, 852 (Spring 1995).
Advising a probate judge how to issue government marriage licenses is not “superintendence and control” of an inferior court ⅛ performance of a judicial function. Instead, it is instructing a State official acting in a nonjudicial capacity on how to perform a ministerial act. Specifically, probate courts are courts of limited jurisdiction.[47] The jurisdiction of those courts is specified in Ala.Code 1975, § 12-13-1, which lists the types of cases and controversies the courts may hear. Issuing marriage licenses is not a function of the court or of its judicial power — the court has no judicial power to issue a marriage license.[48] Instead, it is something the legislature has instructed that probate judges “may” do.[49] Ala.Code 1975, § 30-1-9; Ashley v. State, 109 Ala. 48, 49, 19 So. 917, 918 (1896) (“The issuance of a marriage license by a judge of probate is a ministerial and not a judicial act.”). There is no exercise of a probate court’s jurisdiction when a probate judge issues a .marriage license because the source of the probate judge’s authority to issue such a license does not stem from the jurisdiction of the court. By acting in this case, this Court is not correcting a legal mistake by a judicial officer; it is not supervising or correcting a court. Section- 140(b), Ala. Const.1901, and § 12-2-7(3), Ala.Code 1975, are simply inapplicable in this case.
Furthermore, the decision in Ex parte Alabama Textile Products Corp., 242 Ala. 609, 7 So.2d 303 (1942), provides no exception. In that case, this Court purported to hear the petition under what is now § 12-2-7(3) and not § 12-2-7(2). A subsequent decision, State v. Albritton, 251 Ala. 422, 424, 37 So.2d 640, 642 (1948), notes that § 12-2-7(3)[50] allows the Court to supervise .only the exercise of judicial power: “It is clear from [§ 12-2-7(3)] that the justices of the supreme court are limited in the issuance of these extraordinary writs as necessary to give general superintendence and control of inferior jurisdictions. That is, to supervise persons and bodies clothed with judicial power in the exercise thereof.” (Emphasis added.) It further notes that Alabama Textile involved a review of a “judicial action” of “an inferior tribunal vested with judicial or quasi judicial power,”- and is thus also so limited. Id. In other words, Alabama Textile does not provide this Court with original jurisdiction to supervise the nonjudicial functions of probate judges. See also Russo v. *555 Alabama Dep’t of Corr., 149 So.3d 1079, 1081 (Ala.2014) (“This Court does not have original jurisdiction to issue writs against State officers arid employees other than to the lower courts.”), and Ex parte Anderson, 112 So.3d 31, 35 (Ala.2012) (on application for' rehearing) (Murdock, J., concurring specially) (“In her application for rehearing, Anderson ... [argues] that her petition to this Court did not seek a writ directed to the circuit court requiring it to enforce its original orders but, instead, was a petition asking this Court to issue a writ directly to the State comptroller. I am not persuaded that such a petition is within the original jurisdiction of this Court... .”).[51] This Court is applying a different rule in' this case.
2. The public-interest groups cannot sue in the State’s name.
The public-interest groups here are attempting to pursue this case “in the name of the State.” Citizens can sometimes sue in the name of the State to compel a public officer to perform a legal duty in which the public has an interest. But they cannot do this when “the matter concerns the sovereign rights of the State_” Morrison v. Morris, 273 Ala. 390, 392, 141 So.2d 169, 170 (1962).[52] I must respectfully disagree with the conclusion that this case does not concern the sovereign rights of this State. The relief requested and the relief granted touch directly on Alabama’s sovereign authority to define the institution of marriage. This Court is applying a different rule in this case.
3. The public-interest groups do not have standing.
Not just anyone can file a lawsuit; the person or entity filing the action must have “standing,” meaning the person or entity must have a sufficient stake in the controversy to be allowed to file the case.[53] The legal test this Court would normally use to determine whether “standing” exists is found in Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), which this Court has adopted.[54] In Lujan, certain environmental groups alleged that the Secretary of the Interior was not correctly applying the law, and they wanted the courts to order the Secretary to apply the law in a different way. The Supreme Court of the United States held, among other things, that, in order for those interest groups to sue, they must have been “injured”: “the plaintiff must have suffered an ‘injury in fact’ — an inva *556 sion of a legally protected interest which is (a) concrete and particularized, and (b) ‘actual or imminent, not “conjectural”' or “hypothetical.” ’ ” 504 U.S. at 560 (footnote and citations omitted). The injury suffered must impact the plaintiff “in a personal and individual way.” 504 U.S. at 560 n. 1. Using this logic, this Court has held in the following eases that groups of interested people claiming that they have been broadly or generally harmed by allegedly unconstitutional or unauthorized governmental acts did not show the required injury: Ex parte King, 50 So.3d 1056 (Ala.2010); Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253 (Ala.2004); and Kid’s Care, Inc. v. Alabama Dep’t of Human Res., 843 So.2d 164 (Ala.2002). The public-interest groups’ alleged injuries in this case are not personal or individual in nature. Their injuries are no different than the injuries alleged in the above cases, where standing was rejected by this Court. Their disagreement with the probate judges, alone, does not provide sufficient standing. Government officials cannot be sued simply because a person thinks the officials are doing something wrong; the thing they are doing must result in “concrete and particularized” and “actual or imminent” harm to the person seeking judicial relief.
This Court is applying a different rule in this case. Here, the Court is recognizing an exception to Lujan when a party simply claims that it is acting on behalf of a public interest. If such recitation in the complaint is all that is required to avoid running afoul of Lujan, then Lujan is meaningless. The implications of such a holding are troublesome.
4. This mandamus petition is procedurally deficient.
“When this Court considers a petition for a writ of mandamus, the only materials before it are the petition and the answer and any attachments to those documents.” Ex parte Guaranty Pest Control, Inc., 21 So.3d 1222, 1228 (Ala.2009). When a party seeks mandamus review of a lower court decision, it must attach to the petition “[c]opies of any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition.” Rule 21(a)(1)(E), Ala. R.App. P. There is no record below in this case because there is no lower court proceeding. Although the petition includes various documents issued by the federal district court, we cannot take judicial notice of another court’s records. Green Tree-AL LLC v. White, 55 So.3d 1186, 1193 (Ala.2010). We are in a position similar to that of a circuit court hearing an original petition filed in that court. Those courts, however, have the benefit of Ala. Code 1975, § 6-6-640(a), which requires mandamus petitions to be “verified by affidavit.” [55] Thus, the public-interest groups have provided us with no competent evidence upon which we can determine whether they have proven their case. Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 814 n. 6 (Ala.2003) (“The petitioner has the responsibility of supplying the Court with those parts of the record that are essential to an understanding of the issues set forth in the mandamus petition,”). Normally, this Court would not *557 grant relief in such a situation. Ex parte Allianz Life Ins. Co. of North America, 25 So.3d 411 (Ala.2008). This Court is applying a different rule in this case.
5. This Court is addressing issues not presented.
The public-interest groups have not asked this Court to rule on the constitutionality of Alabama’s marriage-protection laws. Van Voorst v. Federal Express Corp., 16 So.3d 86, 92-93 (Ala.2008) (noting that issues not briefed are waived). They have not presented an argument as to that issue. See Rule 21(a)(1)(C), Ala. R.App. P. (providing that a mandamus petition shall contain a statement of the issues presented and the relief sought). The briefs of the respondents appear to operate on the assumption that the constitutionality of the marriage-protection laws will not be addressed. Indeed, our order for answers and briefs may have misled them to believe that no argument as to this issue was required:
“The respondents are ordered to file answers and, if they choose to do so, briefs, addressing issues raised by the petition, including, but not limited to, any issue relating to standing or otherwise relating to this Court’s subject-matter jurisdiction, and any issue relating to the showing necessary for temporary relief as requested in the petition.”
(Emphasis added.) The petition does not demonstrate “a clear legal right” to relief as to this issue because it does not even argue- it. This Court would normally not perform a party’s legal research. Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994) (“[I]t is not the function of this Court to do a party’s legal research.... ”). This Court is applying a different rule in this case, and, for all practical purposes, is issuing an advisory opinion on this issue to two public-interest groups. Again, this is something that this Court has held it cannot do. Stamps v. Jefferson Cnty. Bd. of Educ., 642 So.2d 941, 944 (Ala.1994).
For the foregoing reasons, I believe that this case is not properly before this Court. As the main opinion notes, this case is both unusual and of great public interest; however, I do not see a way for this Court to act at this time. By overlooking this Court’s normal procedures; by stretching our law and creating exceptions to it; by assuming original jurisdiction, proceeding as a trial court, and reaching out to speak on an issue that this Court cannot meaningfully impact because the Supreme Court of the United States -will soon rule on it; and by taking action that will result in additional confusion and more costly federal litigation involving this State’s probate judges, this Court, in my view, is venturing into uncharted waters and potentially unsettling established principles of law. Therefore, I must respectfully dissent.
ORDER
(Issued March 10, 2015)
In an opinion issued on March 3, 2015, this Court ordered Judge Don Davis, the Probate Judge for Mobile County,
“to advise this Court, by letter brief, no later than 5:00 p.m. on Thursday, March 5, 2015, as to whether he is bound by any existing federal court order regarding the issuance of any marriage license other than the four marriage licenses he was ordered to issue in Strawser [v. Strange (Civil Action No. 14-0424-CG-C, Jan. 26, 2015) ].[ 1]”
*558 On March 5, Judge Davis filed a motion seeking an 11-day extension of time, until March 16, 2015, to comply with this Court’s .order. On March 9, Judge Davis filed a “Response to Show Cause Order” in which he asserts that he should not be included in this Court’s March 3 order out of concern that doing so would require him to violate the federal district court order previously entered in Strawser.[2] Because we find Judge Davis’s concern to be without merit, and for the additional reasons discussed below, Judge Davis’s motion for extension is denied, and he is added as a respondent to this mandamus proceeding and is enjoined from issuing any further marriage licenses contrary to Alabama law.
Judge Davis asks for the 11-day extension to respond to this Court’s question because he has asked for a “ruling” as to that question from the Alabama Judicial Inquiry Commission (“the JIC”):
“As grounds for this Motion, Judge Davis sets out as follows:

a

“2. Judge Davis has sought instruction today from the Alabama Judicial Inquiry Commission.
“3. Proper response to this Court is best made after [United States District Court] Judge -Granade rules and/or after the Alabama Judicial Inquiry Commission rules.”
(Emphasis added.) Our inquiry to Judge Davis was intended as a factual one. We fail to see what knowledge the JIC might have as to the facts regarding whether Judge Davis is bound by an order in any case other than Strawser v. Strange (Civil Action No. 14-0424-CG-C, Jan. 26, 2015), or the fact of what the Strawser order says. As to the latter, the task of reading the order in Strawser and understanding what it says is the task of this Court, not the JIC.[3]
Judge Davis also notes that he has asked the federal district court “for a stay” of its order in Strawser. The fact of this request offers no basis for delay here; indeed, the prospect of such a stay by the federal court is compatible with the action of this Court. Further, Judge Davis has made no showing that the federal court order for which he seeks a stay is one that has not already been executed, i.e., one that concerns any license other than those already issued to the plaintiffs in that case.
Our opinion of March 3 serves as binding statewide precedent. To ensure compliance with that precedent, we also entered on that date and as part of our opinion an order specifically directing Alabama probate judges not to issue marriage licenses contrary to that precedent. Davis has made no showing that he was, or is, the subject of any previously entered federal court order other than the one issued in Strawser, and he makes no showing that that order has any continuing, binding effect on him as to any marriage-license applicants beyond the four couples who were the plaintiffs in that case and who already have received the relief they requested. The inapplicability of the federal *559 court order to any other couple is evident from the terms of the order itself:
“Probate Judge Don Davis is hereby ENJOINED from refusing to issue marriage licenses to plaintiffs due to the Alabama laws which prohibit same-sex marriage. If Plaintiffs take all steps that are required in the normal course of business as a prerequisite to issuing a marriage license to opposite-sex couples, Judge Davis may not deny them a license on the ground that Plaintiffs constitute same-sex couples or because it is prohibited by the Sanctity of Marriage Amendment[, Ala. Const.1901, § 36.03,] and the Alabama Marriage Protection Act[, Ala.Code 1975, § 30-1-19,] or by any other Alabama law'or Order pertaining to same-sex marriage.”
(Capitalization in original;- emphasis added.)
In his motion, Judge Davis himself places emphasis on the samé passages we have emphasized above. In the absence of a showing otherwise, we are left to read this language in accordance with its plain meaning: It grants injunctive relief against Judge Davis only as “to [the] plaintiffs” in Strawser. Our reading of this plain language is confirmed by the fact that the plaintiffs in Strawser sought relief only on their own behalf, not on behalf of any others, and by the fact that federal jurisprudence contemplates that a federal court decides only the case before it, see Ex parte State ex rel. Alabama Policy Institute, 200 So.3d 495, 528-30 (Part II. C.) (Ala.2015),[4] in turn binding the parties before them only with respect to the other parties in the-case.[5]
Notwithstanding the plain description of the activity enjoined by the quoted language in the federal court order requiring Judge Davis to issue licenses “to [the] plaintiffs” in the Straioser case, Judge Davis questions whether the following language somehow was intended to enjoin him in relation to persons other than the four couples who sued and obtained a *560 judgment against him for their personal benefit:
“This injunction binds Judge Don Davis and all his officers, agents, servants and employees, and others in active concert or participation with any of them, who would, seek to enforce the marriage laws of Alabama which prohibit or fail to recognize same-sex marriage.”
The apparent purpose of this latter passage was to clarify who is bound by the federal court’s order, not what action that order requires of those persons. The question of “what” is the subject of the clear statement in the previous paragraph quoted above, i.e., that the enjoined parties are directed to issue marriage licenses specifically “to [the] plaintiffs.” The subsequent reference to persons who “would seek to enforce the marriage laws of Ala-bama” is in reference to Judge Davis and his agents,- employees, etc., to the extent that they would seek to enforce the marriage laws of Alabama as “to [the] plaintiffs.” . We are further confirmed in our reading of the federal court’s order by our understanding, as discussed in notes 4 and 5, supra, that federal court jurisprudence contemplates that a federal district court adjudicates the' obligations, if any, of a defendant or defendants only with respect to the plaintiff or plaintiffs in the case before the court. See also Meinhold v. United States Dep't of Defense, 34 F.3d 1469, 1480 (9th Cir.1994) (“An injunction ‘should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.’ Califano v. Yamasaki, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979).... This is not a class action, and Meinhold sought only to have his discharge voided and to be reinstated.... Beyond reinstatement ..., DOD should not be constrained from applying its regulations to Meinhold and all other military personnel.” (emphasis added)); Zepeda v. United States Immig. & Naturalization Serv., 753 F.2d 719, 727 (9th Cir.1983) (“A federal court ... may not attempt to determine the rights of persons not before the court.”); Hollon v. Mathis Indep. Sch. Dist., 491 F.2d 92, 93 (5th Cir.1974) (holding that “the injunction against the School District from enforcing its regulation against anyone other than [the plaintiff] reaches further than is necessary” (emphasis added)).
As we explained in our March 3 opinion, this Court has acted to ensure statewide compliance with Alabama law in an orderly and uniform manner. We have before us in this case a petitioner in the form of the State that has an interest in and standing as to the actions of every probate judge in the State. Moreover, as we noted in the opinion, Alabama’s probate judges took a variety of different positions in the wake of the federal district court’s decisions, and no single circuit court has jurisdiction over all probate judges to enable it to address that disarray. The inclusion of Judge Davis, along with all the other probate judges in this State, as a respondent subject to this Court’s March 3 order as to future marriage-license applicants is necessary and appropriate to the end of achieving order and uniformity in the application of Alabama’s marriage laws.
Based on the foregoing, Judge Davis is added to this mandamus proceeding as a respondent and is subject to this Court’s order of March 3, 2015. Section 30-1-9, Ala.Code 1975, provides that Judge Davis “may” issue “marriage licenses.” To the extent he exercises this authority, he must issue those licenses in accordance with the meaning of the term “marriage” in that Code section and in accordance with other provisions of Alabama law, as discussed in our March 3 opinion.
STUART, PARKER, MURDOCK, MAIN, WISE, and BRYAN, JJ., concur.
SHAW, J., dissents.
*561 SHAW, Justice (dissenting).
As explained in my dissent in Ex parte State ex rel. Alabama Policy Institute, 200 So.3d 495, 553 (Ala.2015), I do not believe that this Court has jurisdiction in this case; therefore, I dissent.
ORDER
(Issued March 4, 2016)
IT IS ORDERED that all pending motions and petitions are DISMISSED.
WISE and BRYAN, JJ., concur.
MOORE, C.J., and STUART, BOLIN,. PARKER, MURDOCK, SHAW, and MAIN, JJ., concur specially.
MOORE, Chief Justice
(statement of nonrecusal).
On February 11, 2015, the State of Alabama on relation of the Alabama Policy Institute and the Alabama Citizens Action Program initiated this case by filing in this Court an “Emergency Petition for Writ of Mandamus.” • The petition sought a writ of mandamus “directed to each Respondent judge of probate, commanding each judge not to issue marriage licenses to same-sex couples and not to recognize any marriage licenses issued to same-sex couples.”
In its statement-of-facts section the petition described the federal injunctions in Searcy v. Strange, 81 F.Supp.3d 1285 (S.D.Ala.2015), and Strawser v. Strange (Civil No. 14-0424-CG-C) (S.D.Ala. Jan. 26, 2015), which enjoined the Alabama Attorney General from enforcing Alabama’s Sanctity of Marriage Amendment, Art. I, § 36.03, Ala. Const.1901 (“the marriage amendment”), and the Alabama Marriage Protection Act, § 30-1-19, Ala.Code 1975 (“the marriage act”). The petition further stated:
“On February 8, 2015, Chief Justice Roy S. Moore of the Supreme Court of Alabama entered an administrative order ruling that neither the Searcy nor the Strawser Injunction is binding on any Alabama probate judge, and prohibiting any probate judge from issuing or recognizing a marriage license which violates the Marriage Amendment or the Marriage Act.”
Attached to the petition as Exhibit C was a copy of the referenced administrative order. In subsequent paragraphs the petition identified by name four respondent Alabama probate judges who allegedly were issuing marriage licenses to same-sex couples “in - violation of the Marriage Amendment, the Marriage Act, and the Administrative Order.” (Emphasis added.) The petition also named as respondents 63 Judge Does- “who may issue, or may have issued, marriage licenses to same-sex couples in Alabama as a result of the Searcy or Strawser Injunction, in -violation of the Marriage Amendment, the Marriage Act, and the Administrative Order.”
The petition argued that the writ should issue because (1) the marriage amendment and the marriage act were consistent with the United States Constitution and (2) this Court was not bound by a federal district court’s interpretation of the United States Constitution. Alternatively, the petition stated:
“Chief Justice Moore’s Administrative Order provides a separate basis for mandamus relief because it directly prohibits all Alabama probate judges from issuing marriage licenses to same-sex couples in violation of the Marriage Amendment and the Marriage Act. (Admin. Ord. (Ex. C) at 5.) The Administrative Order is binding on all probate judges for the reasons stated in the order. Just as mandamus is appropri *562 ate for this Court to command a lower court’s -compliance [with] this Court’s mandate, see, e.g., Ex parte Ins. Co. of N. Am., 523 So.2d 1064, 1068-69 (Ala.1988), it is appropriate for this Court to command probate judges’ compliance with the Administrative Order.”
Because the petition requested, as an alternative to the determination of the constitutional issues, that this Court order the enforcement of the administrative order, I abstained from voting on this Court’s order of February 13, 2015, that ordered the respondents to file answers and permitted them to file briefs. I also abstained from voting on the opinion and order of March 3, 2015, that granted the petition and ordered the named probate judges “to discontinue the issuance of marriage licenses to same-sex couples.” On March 3, 2015,1 explained in a note to my fellow Justices:
“I have decided to abstain from voting in this case to avoid the appearance of impropriety in light of the memorandum of February 3, 2015, and the administrative order of February 8, 2015 that I provided to Alabama probate judges in my role as administrative head of the Unified Judicial System.”
I likewise have abstained from voting on subsequent orders in this case.
In Ex parte Hinton, 172 So.3d 348 (Ala.2012), Justice Shaw addressed the question whether he could sit on a case “given that it was previously before me when I was a judge on the Court of Criminal Appeals.” 172 So.3d at 353. Canon 3.C.(1), Ala. Canons of Jud. Ethics, states: “A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned..., ” Justice Shaw noted that “ ‘a reasonable person has a reasonable basis to question the impartiality of a judge who sits in [an appellate court] to review his own decision as a trial judge.’” 172 So.3d at 354-55 (quoting Rice v. McKenzie, 581 F.2d 1114, 1117 (4th Cir.1978)). See § 12-1-13, Ala.Code 1975. For an analogous reason I declined to vote in this case when my administrative order was potentially under review. Compare Rexford v. Brunswick-Balke-Collender Co., 228 U.S. 339, 33 S.Ct. 515, 57 L.Ed. 864 (1913) (construing federal law and noting that an appellate judge should not pass upon “the propriety, scope, or effect of any ruling of his own made in the progress of the cause in the court of first instance”).
Justice Shaw identified, however, an exception to the principle that a judge should not review a case in which the judge had participated below: “The principle that a judge must recuse himself or herself in an appeal where the judge ruled in the case while a member of a lower court has been held not to apply if the issue on appeal is different from the issue ruled upon below.” 172 So.3d at 355. In my administrative order, I addressed the issue whether probate judges in Alabama were bound by the orders in Searcy and Strange when they were 'not parties to those cases. This Court’s order of March 3, 2015, which held that the United States Constitution did not require a state to recognize same-sex marriage, mooted that issue.
The issuance of the opinion in Obergefell v. Hodges, 576 U.S. —, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015), on June 26, 2015, has sufficiently altered the posture of this case to cause me to reconsider my participation. The effect of Obergefell on this Court’s writ of mandamus ordering that the probate judges are bound to issue marriage licenses in conformity with Alabama law is a new issue before this Court. The controlling effect of Obergefell was not at issue when I earlier abstained from voting. The issue then addressed was the effect of the order of a federal district court, which I had addressed in my administrative or *563 der. In his analysis of the recusal issue in Hinton, Justice Shaw said:
“Participation in the instant case does not involve a determination of the correctness, propriety, or appropriateness of what I did as a member of the Court of Criminal Appeals in Hinton v. State, because we are now faced with an issue that had not been decided by the trial court in the case that was before the Court of Criminal Appeals while I was serving on that court. My impartiality cannot be questioned because I am not called upon to review my prior decision. ...”
172 So.3d at 355. Likewise in this case, the issue now before the Court “does not involve a determination of the correctness, propriety, or appropriateness” of my administrative order.
In joining this case to consider the effect of Obergefell, I am not sitting in review of my administrative order, nor have I made any public statement on the effect of Obergefell on this Court’s opinion and order of March 3, 2015. My expressed views on the issue of same-sex marriage are also not disqualifying.
“ ‘A judge’s views on matters of law and policy ordinarily are not legitimate grounds for recusal, even if such views are strongly held. After all, judges commonly come to a case with personal views on the underlying subject matter _ Far from necessarily warranting recusal, typically such views merely mark an active mind.’ ”
Barber v. Jefferson Cty. Racing Ass’n, Inc., 960 So.2d 599, 618 (Ala.2006) (Stuart, J., statement of nonrecusal) (quoting United States v. Snyder, 235 F.3d 42, 48 (1st Cir.2000) (citations omitted)).
In Barber, the defendants were charged with “operating illegal gambling devices at the Birmingham Race Course.” 960 So.2d at 601. They sought Justice Bolin’s recu-sal because a voter guide for the 2004 election listed him as opposing gambling. Justice Bolin responded as follows:
“My position on that issue is consistent with the law of Alabama; gambling is illegal in this State. I also oppose other acts that violate the laws of the State of Alabama, such as murder, rape, and robbery, but my personal opposition to the above acts does not prevent me from fairly and unbiasedly participating in cases involving such acts,”
Barber, 960 So.2d at 620 (Bolin, J., statement of nonrecusal) (emphasis added). See also Barber, 960 So.2d at 618 (Stuart, J., statement of nonrecusal) (stating that her “decision in a case [is] based on the application of the law to the facts in that particular case, regardless of my personal opinion”).
Although I have made public comments critical of Obergefell in which I quoted extensively from the four dissenting Justices in that case, “ ‘a judge’s expressing a viewpoint on a legal issue is generally not deemed to be disqualifying in and of itself; this is usually true without regard to where such judicial views are expressed, and even if they are expressed somewhat prematurely or harshly.’ ” Ex parte Ted’s Game Enters., 893 So.2d 376, 392 (Ala.2004) (See, J., statement of nonrecusal) (quoting Richard E. Flamm, Judicial Disqualification § 10.7 (1996)).. Most noteworthy, I have not publicly commented on the question whether this Court, is bound to follow Obergefell or on the effect of Obergefell on this Court’s March 3, 2015, order.[1]
*564 Furthermore, my job as Chief Justice requires me to participate in every case in which I am qualified to sit.
“By establishing a Supreme Court consisting of nine Justices, Alabama law presumes that those Justices have something of value to contribute to the resolution of a case. Consequently, when a Justice recuses himself or herself unnecessarily, the recusal deprives the parties and the public of the benefit of the Justice’s participation and the Justice fails to do the job he or she was elected to do.”
Jones v. Kassouf & Co., 949 So.2d 136, 145 (Ala.2006) (Parker, J., statement of nonre-cusal). Even when issues are difficult and controversial, a judge must decide. “It is a judge’s duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants.” Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). See also Federated Guar. Life Ins. Co. v. Bragg, 393 So.2d 1386, 1389 (Ala.1981) (stating that “ ‘it is the duty of the judge to adjudicate the decisive issues involved in the controversy ... and to make binding declarations concerning such issues, thus putting the controversy to rest’ ” (quoting 26 C.J.S. Declaratory Judgments § 161 (1956))); McGough v. McGough, 47 Ala.App. 223, 226, 252 So.2d 646, 648-49 (Ala.Civ.App.1970) (“If a judge is not disqualified or incompetent under statute, constitution or common law, it is his duty to sit, a duty which he cannot delegate or repudiate.”).
Because it is a judge’s duty to decide cases, a judge may participate in a case after initially not sitting if the issues that prompted that abstention have changed. A recent case illustrates the application of this procedure. The petition for a writ of certiorari in American Broadcasting Cos. v. Aereo, Inc., 573 U.S. —, 134 S.Ct. 2498, 189 L.Ed.2d 476 (2014), according to the Supreme Court docket sheet, was filed October 11, 2013. The Court granted the petition on January 10, 2014. The docket sheet contains a notation that Justice Alito did not participate in the decision to grant certiorari. On March 3, 2014, the Court denied a motion to intervene. The docket sheet shows that Justice Alito did not participate in that decision either. Under the date of April 16, 2014, however, the docket sheet states: “Justice Alito is no longer recused in this case.” Justice Alito participated in the oral argument on April 22 and dissented when the opinion was released on June 25. Thus, in Aereo, Justice Alito recused himself and then unrecused himself. The same scenario played out in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008). Chief Justice Roberts, who did not vote on the decision to grant certiorari on March 26, 2007, “unrecused” himself on September 20 in time to participate in the oral argument on October 9 and in the final decision.[2]
As explained above, I abstained from voting in this case to avoid sitting in review of my own administrative order. Because that order is no longer at issue in this case, I may appropriately sit on the case to review a different issue. A federal court noted that in certain instances a trial judge who had disqualified himself “could *565 resume direction or even decide the issues ...'. But the reason for resuming control should be more than a second reflection on the same facts which the trial judge considered originally disqualified him.” Stringer v. United States, 233 F.2d 947, 948 n. 2 (9th Cir.1956). The relevant facts in this case are not the same because my administrative order is no longer at issue, having been superseded by orders of the entire Court.

. The jurisdiction of probate courts is limited to matters provided by statute. AltaPointe Health Sys., Inc. v. Davis, 90 So.3d 139, 154 (Ala.2012).

. See Alabama Power Co. v. Citizens of State, 740 So.2d 371, 381 (Ala.1999) (defining "judicial power” vested by the Constitution as "the special competence to decide discrete cases and controversies involving particular parties and specific facts”).

. Probate judges are entrusted with performing numerous nonjudicial tasks, -such as maintaining corporate records, Ala; Code 1975, § 10A-1-4.02; issuing driver’s licenses, Ala.Code 1975, § 32-6-4; and, in some counties, serving as the chairperson of the- county commission, Ala.Code 1975, § 11 — 3—1(c). I submit that this Court would not, pursuant to its original jurisdiction, attempt to review a probate judge's performance of any of these tasks.

.Albritton discusses the predecessor statute to what is now § 12-2-7(3).

. I am not stating that a probate judge’s decision to issue a marriage license can never be challenged in the Alabama Supreme Court. I am stating that the case must first be filed in circuit court and then appealed to this Court, where our decision would then have statewide application.

. See also Ala.Code 1975, § 36-15-21 (“All litigation concerning the interest of the state, or any department of the state, shall be under the direction and control of the Attorney General.”).

. This Court has held that standing must exist at the commencement of the litigation and cannot be cured by subsequently adding to the case a party that has the requisite standing. Cadle Co. v. Shabani, 4 So.3d 460, 462-63 (Ala.2008). Therefore, this Court’s recognition and. alignment of additional petitioners after the case was commenced cannot cure the standing problem.

.I have argued in the past that Lujan does not apply in Alabama in certain circumstances; this Court has not agreed with me. See McDaniel v. Ezell, 177 So.3d 454 (Ala.2015) (Shaw, J., dissenting), and Ex parte Alabama Educ. Television Comm’n, 151 So.3d 283 (Ala.2013) (Shaw, J., dissenting). Nevertheless, even I agree that Lujan applies in a case such as this; “I believe that in ... general challenges to government action, the Lujan analysis is helpful,” Ex parte Alabama Educ. *556 Television, 151 So.3d at 294 n. 11 (Shaw, J., dissenting).

. That Code section, we have held, does not apply to mandamus petitions governed by the Alabama Rules of Appellate Procedure. See Ex parte Johnson, 485 So.2d 1098 (Ala.1986). The plain language of the Code section does not contain such a restriction. I question whether Ex parte Johnson excuses the filing of an unverified petition when this Court’s original, and not appellate, jurisdiction is invoked, but I see no need to belabor that issue at this point.

. A "corrected” copy of Judge Davis’s response has since been filed with this Court.

. The latter, task is to read the Strawser order and to consider the import, if any, of that order as a decision by a court in a coordinate judicial system, The JIC is a tribunal commissioned solely for the investigation and prosecution of "complaints" against judges regarding violation of the Canons of Judicial Ethics and the physical and mental ability of judges to perform their duties. Ala, Const. 1901, § 156. It is not a-court of law, and it has no authority — and no role to play — in the performance by this Court of its constitutional duties as a court of law to decide the cases brought before it.

. As we noted in Part II.C., “ ' “[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case,” ’ ” 200 So.3d at 528 (quoting Camreta v. Greene, 563 U.S. 692, 709 n. 7, 131 S.Ct. 2020, 2033 n. 7, 179 L.Ed.2d 1118 (2011), quoting in turn 18 J. Moore et al., Moore’s Federal Practice § 134.02[l][d], p. 134-26 (3d ed.2011)), much less upon a defendant sued by new plaintiffs in a different case, The' principle quoted above from the United States Supreme Court decision in Camreta was manifestly reflected in orders entered on this date by the United States District Court for the Middle District of Alabama, in which that court chose to stay its consideration of a case similar to Strawser and stated that "[t]his court is not bound by Searcy." Hard v. Bentley (Case No. 2:13-cv-00922-WKW; March 10, 2015) (M.D.Ala.).

. In Brenner v. Scott (No. 4:14cv107, Jan. 1, 2015) (N.D.Fla.), a case similar in many respects to the present one, the court explained that "[t]he Clerk has acknowledged that the preliminary injunction requires her to issue a marriage license to the two unmarried plaintiffs,” but that, in "the absence of any request by any other plaintiff for a license,” “[t]he preliminary injunction now in effect does not ■require the Clerk to issue licenses to other applicants.” See also Vikram David Amar, Justia-Verdict, February 13, 2015; https;// verdict.justia.com/2015/02/13/just-lawless-alabama-state-court-judges-refusing-issue-sex-marriage-licenses (explaining that generally a federal district court can enjoin a defendant only with respect to the defendant’s treatment of plaintiffs actually before the court and that the remedial limitation on federal district courts is defined by the identity of the plaintiffs, not just the identity of the defendants) (last visited March 10, 2015; a copy of the Web page containing this information is available in the case file of the clerk of the Ala-bama Supreme Court).

. By contrast, Supreme Court Justice Ruth Bader Ginsburg presided at a same-sex wedding while Obergefell was pending before the Supreme Court, thus demonstrating her view of the merits of :that very case. Maureen Dowd, Presiding at Same-Sex Wedding, Ruth *564 Bader Ginshurg Emphasizes the Word "Constitution,” New York Times, May 18, 2015.

. The docket sheets for Aereo (No. 13-461) and Scientific-Atlanta (No. 06-43) can be found on the Supreme Court Web site. See http://www.supremecourt.gov. Copies of those docket sheets printed from the Web site are available in the case file of the clerk of the Alabama Supreme Court.